UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAN THOMPSON, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | CIVIL ACTION NUMBER: |
| ) | JURY TRIAL DEMANDED |
| ) | |
| CREDITORS INTERCHANGE, ) | |
| INC., ) | |
| ) | |
| DEFENDANT. ) | |

## PLAINTIFF'S VERIFIED COMPLAINT

This is an action brought by the Plaintiff, Jan Thompson, for actual and statutory damages, attorney's fees, and costs for Defendant's violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA"). Plaintiff also seeks compensatory and punitive damages for the Defendant's violations of Alabama's common laws set forth herein.

### JURISDICTION AND VENUE

This Court has jurisdiction under 15 U.S.C. §1692k (d), and 28 U.S.C. §1331, §1332, and §1367. Venue is proper in that the Defendant transacted business here, and the Plaintiff resides here.

### PARTIES

1. The Plaintiff, Jan Thompson, is a resident and citizen of the state of Alabama, Jefferson County, and is over the age of twenty-one (21) years.

2. The Defendant, Creditors Interchange, Inc. is a Delaware corporation registered to do business in New York with the New York Secretary of State. The Defendant was, in all respects and at all times relevant herein,

doing business in the State of Alabama and in this District. The Defendant is engaged in the business of collecting consumer debts from consumers residing in Jefferson County, Alabama and is a "debt collector," as defined by the FDCPA 15 U.S.C. §1692a(6).

## FACTUAL ALLEGATIONS

1. By correspondences dated December 4, 2007, Defendant arranged for the preparation and transmittal of a letter to Plaintiff demanding payment of a debt allegedly due "Fia Card Services, N.A." in the amount of $31,761.41. A true and correct copy of said correspondence is attached hereto and incorporated herein as **"Exhibit A."**

2. "Exhibit A" was received by Plaintiff at her residence in Hoover, Alabama.

3. The alleged and disputed debt of Plaintiff claimed in "Exhibit A" was incurred for personal, family, or household services, and was a "debt" as defined by the FDCPA at 15 U.S.C. §1692a(5).

4. Upon receipt of "Exhibit A", Plaintiff contacted the Defendant and informed the Defendant that she had settled the debt on or about September 17, 2007, and disputed that she owed the debt. Plaintiff faxed the Defendant a copy of the settlement letter, attached **as Exhibit "B"**.

5. On December 11, 2007, an agent or employee of the Defendant named "Paula Swain" contacted the Plaintiff with regard to this alleged debt. Swain told the Plaintiff not to "lie to her" because Swain "knew" that the Plaintiff had a $500,000.00 loan. This loan is for a beach house that her ex-husband solely owns. When this was explained to the agent or employee of the Defendant, that agent or employee responded "I can see why he divorced you."

6. Swain and/or other agents or employees of the Defendant contacted Janet and David Matthews, the Plaintiff's mother and father, regarding this debt in December 2007. Neither David nor Janet Matthews are obligated under the alleged debt owed by their daughter, Jan Thompson.

7. In December 2007, Swain or an agent or employee of the Defendant left a message on Janet Matthews' answering machine disclosing that the

Plaintiff owed a debt and stating "if you have any concern or care for your daughter you will contact us immediately and tell us where she is."

8. Swain and/or other agents or employees of the Defendant contacted Plaintiff's ex-husband and disclosed that Plaintiff owed a debt. Plaintiff has been divorced for three years.

9. This is not the first time that this Defendant has intentionally and illegally contacted family members and other third parties regarding consumers' alleged debts. In fact, on November 26, 2003, this Defendant entered into an "Assurance of Discontinuance Pursuant to Executive Law Section 63(15)" in the state of New York. This document, executed by this Defendant and the New York Attorney General's Office specifically prohibits "discussing debts with third parties such as employers and family members without consent or authorization under the law." This document is attached hereto as "**Exhibit C.**" Exhibit B goes on to further state that "evidence of a violation of this Assurance shall constitute *prima facie* proof of a violation of the above cited statutes," including the FDCPA.

## COUNT ONE
## FAIR DEBT COLLECTION PRACTICES ACT

10. The Plaintiff adopts the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

11. The Defendant has engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA") with respect to the Plaintiff's alleged consumer debt.

12. The Defendant used false representations and/or deceptive means to attempt to collect a debt or obtain information concerning the Plaintiff in violation of §1692e(2) and §1692e(10).

13. The Defendant violated §1692f by using unfair and/or unconscionable means to attempt to collect a debt.

14. The Defendant violated §1692g(b) by continuing to attempt to collect a debt without providing the Plaintiff verification of the debt after the Plaintiff disputed the debt and notified the Defendant of the dispute in

writing.

15. The Defendant violated §1692b(2) and §1692c(b) by contacting the Plaintiff's parents and ex-husband when the Defendant had the Plaintiff's location information. Said illegal contact with these third parties was solely for the purpose of harassing the Plaintiff into paying a debt she did not owe.

16. As a proximate result of the Defendant's actions, the Plaintiff was caused to suffer actual damages for worry, anxiety, nervousness, and mental anguish.

## COUNT TWO
## NEGLIGENT TRAINING AND SUPERVISION

17. The Plaintiff adopts the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

18. The Defendant knew or should have known the status of the alleged debt and of the conduct set forth herein which was directed at and visited upon the Plaintiff.

19. The Defendant knew or should have known that said conduct was improper.

20. The Defendant negligently failed to train and supervise collectors in order to prevent said improper conduct.

21. The Defendant recklessly and wantonly failed to train and supervise collectors on the FDCPA as it relates to communications with consumers and third parties.

22. As a result of the Defendant's negligence, the Plaintiff suffered worry, anxiety, nervousness, and mental anguish.

## COUNT THREE
## RECKLESS AND WANTON TRAINING AND SUPERVISION

23. The Plaintiff adopts the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

24. The Defendant knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiff.

25. The Defendant knew or should have known that the said conduct was improper and illegal.

26. The Defendant recklessly and wantonly failed to train and supervise collectors in order to prevent said improper illegal conduct.

27. The Defendant recklessly and wantonly failed to train and supervise collectors on the FDCPA as it relates to communications with consumers and third parties.

28. As a result of the Defendant's recklessness and wantonness, the Plaintiff suffered worry, anxiety, nervousness, and mental anguish.

## COUNT FOUR
## VIOLATION OF THE RIGHT OF PRIVACY

29. The Plaintiff adopts the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

30. Plaintiff alleges that the Defendant and/or its agents' conduct intruded into the Plaintiff's physical solitude, private activities or seclusion by contacting her parents and ex-husband regarding an alleged debt she owed.

31. Defendant's conduct was an intentional and wrongful intrusion into the Plaintiff's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

32. Plaintiff alleges that as a direct and proximate result of Defendant's invasion of her privacy, she suffered damages as described herein below.

## AMOUNT OF DAMAGES DEMANDED

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands a judgment against the Defendant as follows:

A. Declaratory judgment that the Defendant's conduct violated the FDCPA;

B. Statutory damages of $1,000 from the Defendant for the violations of the FDCPA (15 U.S.C.§1692k);

C. Actual damages for the Defendant's violations of the FDCPA;

D. Costs and reasonable attorney's fees from the Defendant pursuant to 15 U.S.C.§1692k;

E. Compensatory and punitive damages to be determined by the trier of fact against Defendant on Plaintiff's state law claims for damages due to the Negligent Training and Supervision, and Reckless and Wanton Training and Supervision; Invasion of Privacy; and,

F. Such other and further relief that this Court deems necessary, just and proper.

_____
Jan Thompson, Plaintiff

_____
Whitney Seals
Attorney for Plaintiff

**OF COUNSEL:**
Pate & Cochrun, L.L.P.
P.O. Box 10448
Birmingham, AL 35202-0448
(205) 323-3900
(205) 323-3906 (facsimile)

**STATE OF ALABAMA)**
**JEFFERSON COUNTY)**

Before me, the undersigned authority, a notary public, in and for said county in said state, personally appeared JAN THOMPSON, who after first by me being duly sworn, deposes and says as follows: My name is JAN THOMPSON and I am the plaintiff in the above-styled cause. I have read the above Verified Complaint and the allegations and averments contained therein are true and correct to the best of my knowledge, information and belief.

_____
Jan Thompson, Plaintiff

Sworn to and subscribed before me, this the 20th day of May, 2008.

_____
NOTARY PUBLIC
My commission expires: 8-2-09

**PLAINTIFF REQUESTS THAT DEFENDANT BE SERVED A COPY OF THIS COMPLAINT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED TO THE FOLLOWING ADDRESS:**

CREDITORS INTERCHANGE, INC.
80 HOLTZ DR.
BUFFALO, NY 14225

# EXHIBIT "A"



**Creditors Interchange**
80 Holtz Drive
Buffalo, NY 14225

RE: Your account with
FIA CARD SERVICES, N.A.

Reference No. 11585950 CDD
Current Creditor: FIA CARD SERVICES, N.A.
Account Number: 5490995999428631
Amount Due: $31761.41

**Office Hours (Eastern Time):**
Monday - Thursday   8:00 am - 12:00 Midnight
Friday              8:00 am - 9:00 pm
Saturday            8:00 am - 2:00 pm
Sunday              9:00 am - 1:00 pm

Date: 12/04/2007

ANY CHECK RETURNED FOR INSUFFICENT FUNDS OR ACCOUNT CLOSED MAY BE ASSESSED A PROCESSING FEE IF PERMITTED BY STATE LAW.

PLEASE DETACH AND RETURN THIS PORTION WITH PAYMENT

Your account is seriously past due, and FIA CARD SERVICES, N.A. has authorized Creditors Interchange to initiate collection efforts to recover the total amount due as noted above. Please be advised that your cardmember agreement provides for arbitration of this account. As such, your account may soon be forwarded to a law firm for collection and arbitration review.

No one has yet submitted the necessary paperwork to file an arbitration claim against you. However, if you neglect your obligation, we may be compelled to send your account to a collection law firm who may initiate arbitration steps in an attempt to remedy the outstanding amount due of $31761.41 that you owe our client, FIA CARD SERVICES, N.A..

It is our intent to resolve this matter amicably. You should contact our office at the number listed below to work out an arrangement.

Please be sure to include your account number and/or reference number should you choose to remit your balance of $31761.41. Please remit your payment to: Creditors Interchange, P.O. Box 1335, Buffalo NY 14240-1335.

Sincerely,

Christy Lynn
Phone Number: 1-877-770-6326

This is an attempt to collect a debt and any information obtained will be used for that purpose. This is a communication from a debt collector.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original credit grantor, if different from the current credit grantor.

Creditors Interchange Receivable Management, LLC is a Delaware limited liability company.

Si prefieres hablar sobre su cuenta con un representante que habla español, por favor llamais nos a 1-866-894-7534.

# EXHIBIT "B"



# COLLECTCORP

September 17, 2007

Jan M Thompson
609 Founders Park Dr W
Birmingham, AL
352264135

Dear Jan M Thompson :

**Re: Bank of America**
**Current Balance: $36,307.12**
**Account Number: 54909959994286631**
**E.D.P. #: 71-072432212**

Your account has been placed with Collectcorp Corporation for collection. This will verify that we agree to accept $5,975.36, as settlement on the above noted Bank of America account.

Upon clearance of the above noted funds, a second letter will be issued as an unconditional verification that the above stated amount was received, has been cleared and is accepted as settlement of the above noted account.

Cash, Certified Check, Money Order, Autoscribe, or Western Union must be received in our office on or before September 24, 2007, or this offer will be considered null and void.

The Internal Revenue Service requires the creditor to provide it with information about amounts of $600.00 or more that are discharged as a result of a cancellation of debt. If the amount the creditor will discharge when the final payment of your settlement is received is $600.00 or more the creditor will be required to notify the IRS of the discharged amount. You will receive a copy of the form 1099C that will be filed with the IRS.

If you have any questions or concerns regarding this settlement please contact Tony Sozinho at 1-866-541-7282

We trust the above is to your satisfaction.

Yours truly,
COLLECTCORP CORPORATION

Tony Sozinho
Collection Manager

THIS HAS BEEN SENT TO YOU BY A DEBT COLLECTOR        COLLECTCORP CORPORATION

# EXHIBIT "C"

THE ATTORNEY GENERAL OF THE STATE OF NEW YORK
BUFFALO REGIONAL OFFICE

---

In the Matter of Creditors Interchange, Inc.

---

## ASSURANCE OF DISCONTINUANCE
## PURSUANT TO EXECUTIVE LAW
## SECTION 63(15)

Pursuant to the provisions of Executive Law § 63(12) and General Business Law ("GBL") Article 22-A, Eliot Spitzer, Attorney General of the State of New York, caused an inquiry to be made into certain practices of Creditors Interchange, Inc. ("CI"), and based upon that inquiry makes the following findings:

1. CI is a domestic corporation with its principal place of business located at 8080 Holtz Drive, Cheektowaga, NY 14225. Since 1960, it has engaged in the business of collecting past due debts owed its clients. CI is licensed and bonded to collect debts throughout the United States.

2. The Attorney General's Office has received complaints from consumers alleging that CI has violated New York's Debt Collection Procedures Act, General Business Law ("GBL") Art. 29-H, and the federal Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692 - 1692(o) ("FDCPA").

3. CI's collectors have, in certain instances, discussed consumers' debts with third parties such as employers and family members of debtors, attempted to collect debts by claiming to be calling from a law office, continued to call a debtor or a debtor's family members after being asked by the debtor to cease all calls, or failed to respond expeditiously to a debtor's request for verification of a debt.

1

## II

## PROHIBITED PRACTICES

IT IS FURTHER AGREED that CI will cease and desist from engaging in business practices which violate GBL Articles 29-H and 22-A or the FDCPA, including, but not limited to:

> (i) discussing debts with third parties such as employers and family members of debtors without consent or authorization under the law;
>
> (ii) attempting to collect a debt by falsely claiming to be calling from a law office;
>
> (iii) continuing to call a debtor or a debtor's family members after being notified in writing by the debtor to cease all calls, except that the collector may advise the debtor that efforts are being terminated, or that CI or the creditor will invoke specified remedies;
>
> (iv) failing to timely respond without good reason to a debtor's written request for verification of a debt.

## III

## IMPROVED COMPLIANCE PROTOCOLS AND PROCEDURES

IT IS FURTHER AGREED that CI will immediately implement protocols and procedures to ensure compliance with the above statutes.

## IV

## CORRESPONDENCE WITH THE ATTORNEY GENERAL'S OFFICE

IT IS FURTHER AGREED that:

3

(a) CI's Director of Compliance shall author and sign all correspondence with the Attorney General's Office regarding complaints against CI which are received by the Attorney General.

(b) CI's responses to such complaints shall accurately state, *inter alia*: the results of CI's inquiry into the allegations; the relief, if any, CI will provide to the complainant; the compliance history of the collector involved; and the disciplinary action, if any, taken against the collector and/or supervisor.

## V

## PENALTIES AND COSTS

IT IS FURTHER AGREED that CI shall pay to the State of New York at the time of the execution of this Assurance the sum of Thirty Thousand Dollars ($30,000.00) as costs, and the sum of Thirty Thousand Dollars ($30,000.00) as civil penalties, by certified check for the aggregate sum of Sixty Thousand Dollars ($60,000.00), delivered to Eliot Spitzer, Attorney General of the State of New York, c/o Dennis Rosen, Assistant Attorney General, 107 Delaware Avenue, Buffalo, NY 14202.

## VI

## COMPLIANCE REPORT TO THE ATTORNEY GENERAL

IT IS FURTHER AGREED that CI shall file with the Attorney General, within ninety days after this Assurance is executed by both parties, a report signed by an officer of CI, demonstrating that CI has implemented policies and procedures to achieve compliance with this Assurance.

4

## VII

## CHARACTERIZATION OF THIS ASSURANCE

IT IS FURTHER AGREED that the acceptance of this Assurance by the Attorney General shall not be deemed or construed as an approval of the Attorney General of any of the activities of CI, and CI shall not make any representations to the contrary.

## VIII

## PRIVATE RIGHTS

IT IS FURTHER AGREED that nothing contained herein shall be construed to deprive any person, corporation, association or any other entity of any private right under the law, or to confer upon any of them any rights as a third party beneficiary to enforce this Assurance.

## IX

## ENFORCEMENT

IT IS FURTHER AGREED that, pursuant to Executive Law § 63(15), evidence of a violation of this Assurance shall constitute *prima facie* proof of a violation of the above cited statutes in any civil action or proceeding hereafter commenced by the Attorney General.

Dated: Buffalo, NY
November __, 2003

CREDITORS INTERCHANGE, INC.

By: _____
BRUCE H. GRAY
~~President~~ Chief Operating Officer

Consented to:

5

ELIOT SPITZER
Attorney General of the
State of New York

By: _____
DENNIS ROSEN
Assistant Attorney General

6

STATE OF NEW YORK     )
                      ) SS:
COUNTY OF ERIE        )

On this 26 day of November, 2003, before me came Bruce H. Gray, who, being duly sworn, did depose and say that he is the President of Creditors Interchange, Inc. described herein, and which executed the above Assurance of Discontinuance, and that he executed such Assurance of Discontinuance on behalf of Creditors Interchange, Inc. with full authorization to do so.

*Kenneth A Manning*
*Notary Public, State of New York*
*No. 02MA4671226*
*Qualified in Erie County*
*Commission Expires 2/28/2007*